| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:16-CR-71(5) |
| | § | |
| SONIA MORGAN | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Sonia Morgan's ("Morgan") *pro se* Motion Requesting Sentence Modification Pursuant to 18 U.S.C. § 3582(c)(1)(ii) (#301), wherein she seeks a reduction in her sentence in light of the First Step Act, *pro se* Emergency Motion for Compassionate Release due to Extraordinary and Compelling Reasons Under 18 U.S.C. (c)(1)(A) (#315), and *pro se* Motion to add Amendments to Compassionate Release (#316), wherein she requests compassionate release due to COVID-19.  The Government filed a response in opposition to her Motion Requesting Sentence Modification under the First Step Act (#310) and to her Motion for Compassionate Release (#319).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion for compassionate release.  After considering the motions, the submissions of the parties, Probation's recommendation, and the applicable law, the court is of the opinion that Morgan's request should be DENIED.

I.    Background

On May 30, 2017, Morgan pleaded guilty to Count One of the Third Superseding Indictment, Conspiracy to Possess with the Intent to Manufacture and Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), stemming from her serving as the head of a drug-trafficking cell based in Pennsylvania.  Morgan was responsible for the

transportation of kilogram quantities of cocaine from Texas to Pennsylvania and the return of drug proceeds to Texas, utilizing couriers she supervised.  Morgan stipulated that she is accountable for 50 to 150 kilograms of cocaine.  On January 31, 2018, Morgan was sentenced to 151 months' imprisonment, followed by 5 years' supervised release, and judgment was entered.

On June 18, 2019, Morgan filed a Motion Pursuant to 18 U.S.C. § 3742(a)(1)(2) (#297) asserting that she was entitled to a reduced sentence of 121 months' imprisonment because a two-point sentence enhancement to her offense level for her role in the conspiracy was improper. Morgan contended that she was not "an organizer, leader, manager, or supervisor in any criminal activity" and, therefore, a lower sentencing range should have been afforded under § 3742.  On July 3, 2019, the court entered its Memorandum and Order (#298) denying the Motion Pursuant to 18 U.S.C. § 3742(a)(1)(2) (#297) because it was filed more than 18 months after the entry of judgment and, thus, it was procedurally barred.  In the instant motions, Morgan reasserts that she is entitled to a reduced sentence of 121 months' imprisonment under § 3582(c)(1)(ii)[1] and claims that, due to her various medical conditions, she is at risk for contracting COVID-19 and, therefore, entitled to compassionate release.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

---

[1] Morgan uses language from § 3582(c)(1)(A)(i), arguing that "extraordinary and compelling reasons" exist because she was mischaracterized as a "leader."

The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion

requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

Here, it appears regarding Morgan's first motion (#301) that she did not submit any request for compassionate release to the warden where she is housed.  The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period, regarding Morgan's first motion.  *See Alam*, 2020 WL 2845694, at *1 ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *United States v. Garcia-Mora*, No. CR 18-00290-01, 2020 WL 2404912, at *2 (W.D. La. May 12, 2020) ("Section 3582(c)(1)(A) does not provide [the court] with the equitable authority to excuse [the defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *2 (W.D. La. Apr. 20, 2020); *see also Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016) ("[J]udge-made exhaustion

doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."). Accordingly, at this time, the court does not have authority to grant relief Morgan regarding her first motion because she has not met the exhaustion requirement.  In any event, Morgan's "leadership" argument does not meet the requirements for compassionate release, and the record reflects that she was properly accorded a supervisory role in the drug conspiracy, warranting a two-level increase in her offense level.  Morgan's subsequent motions (##315, 316) rely upon a March 24, 2020, request to the warden.  On April 16, 2020, the warden denied her request for compassionate release on the basis that Morgan's medical conditions did not meet the statutory criteria and her concerns about COVID-19 did not warrant an early release from imprisonment. Although Morgan's subsequent motions (##315, 316) complied with the exhaustion requirement, nothing in these motions indicates that extraordinary and compelling reasons exist to modify her term of imprisonment and release her from confinement.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii)

5

the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[2] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Here, according to Morgan's Presentence Investigation Report ("PSR"), she is 56 years old and her medical history includes diabetes, hypertension, neuropathy, sleep apnea, asthma, and back injury.  She now claims to suffer also from hyperlipidemia,

---

[2] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

cataracts, degeneration of vertebral discs, obesity, and a weak immune system.[3]   Morgan's

recitation of her various aliments does not meet the criteria listed above.   None of these medical

conditions is terminal or substantially diminishes her ability to provide self-care.   Hence, Morgan

has failed to establish that a qualifying medical condition exists that would constitute extraordinary

and compelling reasons to reduce her sentence.

Defendant's request for compassionate release potentially falls into the fourth, catch-all

category of "other" extraordinary and compelling reasons, which specifically states that the

Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary

and compelling reason other than, or in combination with, the reasons described in subdivisions

(A) through (C)."   *Id.* § 1B1.13 cmt. n.1(D).   Although Subdivision D is reserved to the BOP

Director, the Commission acknowledged, even before the passage of the First Step Act, that courts

are in the position to determine whether extraordinary and compelling circumstances are present.

*United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019)

("Read in light of the First Step Act, it is consistent with the previous policy statement and with

the Commission guidance more generally for courts to exercise similar discretion as that

previously reserved to the BOP Director in evaluating motions by defendants for compassionate

release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A)

. . . is that when a defendant brings a motion for a sentence reduction under the amended

provision, the Court can determine whether any extraordinary and compelling reasons other than

those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

---

[3] Probation reports that Morgan is not bedridden, resides at a camp, is on a lower floor housing
unit, and rides the medical van to get around the campground.

Here, there is no indication that the BOP Director made a determination regarding extraordinary and compelling reasons on behalf of Morgan for any reason.  Moreover, in the court's discretion no extraordinary and compelling reasons exist with respect to Morgan's situation.  Morgan's personal belief that her role in the crime was mischaracterized, which lacks support in the record, does not present extraordinary and compelling reasons for relief.  Moreover, Morgan has served only 46 months or about 30% of her 151-month sentence of imprisonment.  Thus, Morgan has not presented "other reasons" establishing extraordinary and compelling reasons warranting compassionate release.

Although Morgan, expresses legitimate concerns regarding COVID-19, she does not establish that the BOP cannot manage the outbreak within her correctional facility or that the facility is specifically unable to treat Morgan, if she were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute"

8

and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Morgan has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce her sentence to time served and warrant his release from imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). Furthermore, Morgan's PSR reveals that her criminal history includes prior convictions for delivery of a controlled substance (2), possession of a controlled substance, and use or possession of drug paraphernalia. She also has a gambling problem and a history of substance abuse. Under these circumstances and in view of her offense of conviction, the court cannot conclude that she would not pose a danger to any other person or to the community, if released. Hence, Morgan has not demonstrated that she satisfies the requirements of the First Step Act regarding compassionate release.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 4,465 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be

9

safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United*

*States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Morgan's track record is similarly a poor one.

In short, Morgan has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances").  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."  *Id.*

III.   Conclusion

Consistent with the foregoing analysis, Morgan's Motions (##301, 315, 316) are DENIED.

SIGNED at Beaumont, Texas, this 25th day of June, 2020.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE